UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


COBBLER NEVADA, LLC,

           Plaintiff,

           Case No. 3:15- cv-01077-ST

**v.**

           **OPINION AND ORDER**

**JAMES REARDON,**

           Defendant.


**STEWART, Magistrate Judge:**

<u>**INTRODUCTION**</u>

This is an action for copyright infringement under 17 USC §§ 101 *et seq*, against

defendant, James Reardon, for the unlicensed copying, promotion and distribution of plaintiff's

motion picture titled *The Cobbler* through the BitTorrent network, a form of peer-to-peer file

sharing.  Although the original Complaint was filed against an Internet Protocol ("IP") address,

plaintiff sought and obtained discovery from Internet Service Provider Comcast to identify the IP

subscriber and a subpoena pursuant to FRCP 45 for the deposition of the non-party IP subscriber

in order to identify the user of that IP address.  On October 6, 2015, pursuant to the subpoena,

Mr. Reardon appeared for a deposition and admitted that he had used BitTorrent in the past to

download and watch overseas television shows and also to download and watch *The Cobbler*

once. Statement of Fees and Costs (docket #22), pp. 2-3.[1] Plaintiff then filed a First Amended

Complaint (docket #14) on October 13, 2015, substituting Mr. Reardon as the named defendant.

About two weeks later on October 29, 2015, plaintiff filed an Unopposed Motion to

Approve Consent Judgment (docket #17) and a Stipulated Consent Judgment (docket #16)

signed by Mr. Reardon. Among other things, the Stipulated Consent Judgment provides that:

(1) the parties consent to allow a Magistrate Judge to enter final orders and judgment in this case

in accordance with FRCP 73 and 28 USC § 636(c); (2) Mr. Reardon had been advised to, and

given an opportunity to, obtain independent counsel: (3) Mr. Reardon admits liability; (4) Mr.

Reardon agrees to entry of a Money Judgment in favor of plaintiff in the sum of $8,500.00,

including costs and fees and damages: (5) pursuant to the terms of a separate settlement

agreement, plaintiff agrees to not execute on that Money Judgment as long as Mr. Reardon

complies with the settlement agreement and Stipulated Consent Judgment; (6) Mr. Reardon

agrees to "immediately delete" from his computer all unlicensed content, BitTorrent clients, and

"all other software used to obtain media through the Internet by peer-to-peer transfer or

exchange;" and (7) Mr. Reardon is permanently enjoined from "directly , contributorily or

indirectly infringing plaintiff's rights in their motion pictures" and" participating or facilitating in

peer-to-peer BitTorrent file exchanges without an express license from all rights holders as to

specific content exchanged."

Concerned that Mr. Reardon had agreed to the terms of the Stipulated Consent Judgment

without the benefit of counsel, the court held a telephone hearing with the parties. Mr. Reardon

advised the court that he had agreed to settle with plaintiff because he could not afford to hire

counsel and was just trying to have the issue resolved and over with. The court directed plaintiff

---

[1] Although plaintiff has not submitted excerpts of the deposition transcript, Mr. Reardon confirmed the substance of his testimony at the telephone hearing.

to file a Statement of Fees and Costs to which Mr. Reardon could object.  Mr. Reardon did object by email stating that "the over all hours seem high" and that he was not aware that he "was paying $750 as a fine and the rest attorney's and filing fee."  For the reasons set forth below, plaintiff's motion is denied.

## DISCUSSION

Plaintiff asks the court to grant its motion to approve the Stipulated Consent Judgment entered into with Mr. Reardon.  Mr. Reardon, as is true of most defendants in many similar cases filed by plaintiff, cannot afford to hire an attorney, acknowledges that he may be liable, but wants to resolve the matter quickly.  To avoid any possible grounds for relief from a judgment under FRCP 60(b), this court has an obligation to ensure that no fraud, misrepresentation or misconduct has been committed by plaintiff dealing with a self-represented party.  To that end, it is incumbent on this court to determine whether the amount of the settlement is reasonable under the circumstances.

As explained at the hearing and in plaintiff's Statement of Fees and Costs, the Money Judgment of $8,500.00 in the Stipulated Consent Judgment is twice the amount of $4,250.00 that Mr. Reardon agreed to pay plaintiff in installment payments pursuant to the separate settlement agreement.  When settling similar cases, plaintiff often requires a defendant to sign a Stipulated Consent Judgment for twice the amount due under a separate settlement agreement as a method of securing payment if the defendant fails to comply with the terms of the separate settlement agreement and injunction.

Mr. Reardon did not try to negotiate the amount of the settlement, but learned from his brief online research that the Copyright Act authorizes statutory damages from $750.00 to $30,000.00 for non-willful infringements and up to $150,000.00 for willful infringements.

17 USC § 504(c).  However, he was unaware that pursuant to 17 USC § 504(c)(2), the court has

discretion to reduce the award to a sum not less than $200 where the "infringer was not aware

and had no reason to believe that his or her acts constituted an infringement of copyright."  In

addition, the Copyright Acts allows the court, in its discretion, to award costs and attorney fees

to the prevailing party.  17 USC § 505.

      Plaintiff proposed the amount of the settlement to Mr. Reardon by adding statutory

damages of $750.00 to its attorney fees of $3,498.00[2] based on 11.66 hours incurred by Drew P.

Taylor[3] at the hourly rate of $300.00.  Statement of Fees and Costs (docket #22), Ex. 1.  In

addition, plaintiff incurred costs of $1,126.45, consisting of service fees ($58.25 for the First

Amended Complaint and $55.00 for the FRCP 45 subpoena), FRCP 45 deposition court reporter

appearance fee and transcript ($93.20), Comcast subpoena response fee ($70.00), filing fee

($400.00), and fee for electronic transcript of defendant's infringement record ($450.00).  *Id*,

Ex. 2.

      If plaintiff prevails in this case and requests the court to award attorney fees, then the

court must determine whether the amount is reasonable by using the lodestar method.  The

"lodestar" in the attorney fee context is the "number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate."  *Pennsylvania. v. Del Valley Citizens' Council

for Clean Air*, 478 US 546, 564 (1986).  The court must then decide whether to enhance or

reduce the figure by evaluation the factors discussed in *Kerr v. Screen Extras Guild, Inc.*, 526

F2d 67 (9th Cir 1975), that were not already considered in calculation of the lodestar figure.

---

[2] The motion contains a typographical error stating that the attorney fees are $3,489.00.  The actual amount based on 11.66 hours at $300.00 per hour is $3,498.00.
[3] Mr. Taylor was supervised by Carl D. Crowell who charges $450.00 per hour.  However, Mr. Crowell's time is largely duplicative and has been excluded.

*Cairns v. Franklin Mint Co.*, 292 F3d 1139, 1158 (9th Cir 2002) (citation omitted).  The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F2d at70.

"[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee."  *Perdue v. Kenny A.*, 559 US 542, 554 (2010).

A review of the time records submitted by plaintiff reveals that most of Mr. Taylor's time was spent attempting to identify the infringing party based on the subscriber's IP address.  He spent 2.0 hours to conduct a pre-filing investigation, the details of which are not specified, and to review data and download infringement  records.[4]  This entry is followed by the notation "apportioned" without further explanation.  Presumably, that time is apportioned because it is the same work performed in other similar cases.  Without further detail, however, it is impossible to know whether this time is reasonable or properly apportioned.

Mr. Taylor spent another 2.66 hours the following day to draft and file a complaint, motion for expedited discovery, and corporate disclosure statement.  That entry also is followed by the notation "apportioned" without further explanation.  He then spent another 1.4 hours to

---

[4] Attorney fees for investigative work done prior to filing a lawsuit are recoverable.  *Dishman v. Unum Life Ins. Co of Am*, 269 F3d 974, 987 n51 (9th Cir 2001).

draft and serve a subpoena on Comcast and mail the first letter to the subscriber and 1.0 hour to send a second letter to the subscriber, draft and file a motion for an FRCP 45 deposition and subpoena, and cover letter. When the subscriber failed to respond, Mr. Taylor spent .8 hour to draft and file a motion to permit service by mail and another cover letter to the subscriber. Those 10 or so tasks total 5.86 hours. Yet all of the pleadings he drafted and filed are the same forms used by plaintiff's attorneys in numerous similar cases filed in this court. Presumably the letters he sent to the IP subscriber also are form letters. By using forms and filling in the appropriate names and dates, each of these tasks should not take more than 15 minutes each. In sum, the number of hours requested is excessive and should be reduced by at least half.

Of greater concern, however, is Mr. Taylor's hourly rate. A reasonable hourly rate is determined by looking to the "prevailing market rates in the relevant community" as well as the skill, experience, and reputation of the lawyer. *Blum v. Stenson*, 465 US 886, 895 (1984). The best evidence of the prevailing rate in Oregon is the periodic Economic Survey conducted by the Oregon State Bar. *Atlantic Recording Corp. v.* Andersen, No. CV 05-933-AC, 2008 WL 2536834, at *14 (D Or June 24, 2008), citing *Roberts v. Interstate Distrib. Co.*, 242 F Supp2d 850, 857 (D Or 2002) (remaining citations omitted). Mr. Taylor's supervising attorney, Mr. Crowell, has been a practicing attorney since 1998, is admitted to practice before numerous courts, as well as the United States Patent and Trademark Office as a patent attorney, has unique expertise in the area of copyright infringement, and has been awarded a rate of $312.00 per hour by this court. *See Voltage Pictures, LLC v. Pecsok*, No. 6:14-cv-01407-AC, 2015 WL 3892394, at *3 (D Or June 24, 2015).

In contrast, Mr. Taylor was admitted to the Oregon State Bar in 2013 and acknowledges that his hourly rate is outside the averages from the 2012 Oregon State Bar Economic Survey

("2012 OSB Survey").  Nonetheless, he points out that the AIPLA Economic Survey for attorneys working in intellectual property places a rate of $300.00 per hour in the 75th percentile for attorneys with less than five years of experience and as the median hourly rate for intellectual property attorneys practicing on the West Coast.  This court declines to use that survey as a basis for determining Mr. Taylor's hourly rate.  First, this court is very hesitant to use specialty surveys to determine hourly rates, especially ones that include geographic areas outside Portland, such as Seattle where attorneys generally charge much higher rates.  Second, this court has no reason to believe that Mr. Taylor has any expertise in intellectual property, let along the 75th percentile of such attorneys.  *See Atlantic Recording Corp.*, 2008 WL 2536834, at *14 (the court found no "evidence of IP expertise such that the AIPLA survey is the superior measure").  Third, and most importantly, this was not a complex case.  It may involve the Copyright Act, but is one of many similar cases being handled by the same law firm.  It does not require any unique skill that justifies an hourly rate higher than the $175.00 median rate in the Portland area for an attorney admitted for 0-3 years listed in the 2012 OSB Survey.  Based on that hourly rate and a reduction in the number of hours, a reasonable attorney fee in this case for plaintiff is much closer to $1,000.00 than to $3,498.00.

Even if the portion of the settlement attributable to attorney fees is not deemed reasonable by this court, plaintiff argues that the overall settlement amount is reasonable.  It argues that Mr. Reardon could be subject to statutory damages of up to $150,000.00 because his conduct is properly deemed willful under 17 USC § 504(c)(2).  Plaintiff points out that the use of BitTorrent is not accidental, but requires a series of willful intentional acts to download and install software and select the content to be downloaded.  In support of the amount of statutory damages faced by defendants for copyright infringement, plaintiff cites *Sony BMG Music Entm't*

*v. Tenenbaum*, 660 F3d 487, 500 (1st Cir 2011), *cert denied*, 132 S Ct 2431 (2012), which affirmed a jury award of $22,500.00 in statutory damages for each of 30 copyrighted music recordings that defendant downloaded and distributed to others for eight years through Napster and other file-sharing networks, despite receiving many warnings regarding its illegality. However, this case stands in stark contrast since Mr. Reardon did not download many copyrighted works for years after receiving warnings regarding potential liability. In this court's view, based on the information revealed to date, Mr. Reardon could not be held liable for a willful violation justifying up to $150,000.00 in statutory damages. Instead, based on his one admitted viewing of *The Cobbler*, his liability is reasonably limited to statutory damages for non-willful infringement of $750.00 or perhaps even less, plus reasonable attorney fees.

In addition, the Stipulated Consent Judgment subjects Mr. Reardon to the prospect of paying twice the amount of his settlement if he fails to comply with the terms of his separate settlement agreement and Stipulated Consent Judgment. Assessing a penalty in order to secure a debt is in the nature of a liquidated damages provision. Under Oregon law, a liquidated damages provision in a contract is enforceable if the amount fixed is a "reasonable forecast of just compensation" and the harm caused by breach is "incapable or very difficult of accurate estimation." *Illingworth v. Bushong*, 297 Or 675, 680, 688 P.2d 379 (1984) (*en banc*). However, liquidated damages may be unenforceable if they are "grossly disproportionate" to actual damages. *Id.* As discussed above, the settlement amount of $4,275.00 is unreasonably high. And even if it is reasonable, requiring Mr. Reardon to pay twice that amount upon failing to comply with the terms of the settlement agreement is "grossly disproportionate" and not a reasonable forecast of actual damages. Therefore, the amount of the Stipulated Consent Judgment is void as a penalty.

8 – OPINION AND ORDER

This court also has concerns about the broad terms of the permanent injunction.  The Stipulated Consent Judgment permanently enjoins Mr. Reardon from infringing plaintiff's "rights in their motion pictures" and from reproducing, copying, or distributing "any plaintiff owned or branded motion pictures."  However, only one motion picture is at issue in this case, namely *The Cobbler*, not all of plaintiff's unidentified motion pictures.  In addition, Mr. Reardon is required to delete "all BitTorrent clients" and all other peer-to-peer software on his computer without any showing that such clients or software are illegal.  Furthermore, Mr. Reardon is permanently enjoined from "directly, contributorily, or indirectly participating or facilitating in peer-to-peer BitTorrent file exchanges without an express license from all rights holders as to specific content exchanged."  That language not only extends well beyond protecting only plaintiff's rights, but also fails to recognize that it may not be illegal to download shared mix-use copyrighted material.  In other words, the injunction goes far beyond what plaintiff could recover as a prevailing party in this lawsuit.

## **ORDER**

For the reasons set forth above, plaintiff's Unopposed Motion to Approve Consent Judgment (docket #17) is DENIED.

DATED  December 16, 2015.


s/ Janice M. Stewart
_____
Janice M. Stewart
United States Magistrate Judge